## Trevethan *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Infant—Sudden start of train—Case for jury.*

In an action against a railroad company to recover damages for personal injuries to a child five years old resulting from the child being thrown from the steps of a car of a train on which he had climbed when the train had stopped at a station, the case is for the jury where the testimony for the plaintiff, although strongly contradicted, tended to show that the child was seated on the lower step while the train was at a standstill, in view of the conductor and brakeman, or either of them, or in such a position that they or either of them should in the exercise of reasonable care, have seen him in this position of peril before they started the train.

Argued Dec. 11, 1912. Appeal, No. 92, Oct. T., 1912, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1908, No. 3,536, on verdict for plaintiff in case of John Trevethan, by his father and next friend, William Trevethan v. Philadelphia & Reading Railway Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BRÉGY, J.

The circumstances of the accident are set forth in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Wm. Clark Mason*, for appellant, cited: Hatch v. Ry. Co., 212 Pa. 29; East St. Louis Connecting Ry. Co. v. Jenks, 54 Ill. App. 91; Barney v. R. R. Co., 126 Mo. 372 (28 S. W. Repr. 1069); State v. R. R. Co., 24 Md. 84; Curley v. Ry. Co., 98 Mo. 13 (10 S. W. Repr. 593); McElvane v.

Ry. Co., 54 So. Repr. 489; Louisville, etc., R. R. Co. v.
Hunt, 11 Ky. Law Rep. 825 (13 S. W. Repr. 275); Oregon
Ry. & Nav. Co. v. Egley, 2 Wash. 409 (26 Pac. Repr.
973); Anternoitz v. R. R. Co., 193 Mass. 542 (79 N. E.
Repr. 789); Clark v. P. & R. R. R. Co., 5 W. N. C. 119;
Blair v. Transit Co., 36 Pa. Superior Ct. 319; Hestonville
Pass. Railway Co. v. Connell, 88 Pa. 520; Woodbridge v.
R. R. Co., 105 Pa. 460; Pitcher v. Ry. Co., 154 Pa. 560;
Leithold v. Ry. Co,. 47 Pa. Superior Ct. 137.

*Herman L. Hecht*, for appellee, cited: Tully v. R. R. Co.,
2 Penniwell (Del.) 537; Cleveland, etc., Ry. Co. v. Stein,
24 Ohio Cir. Ct. 643; Norfolk & Western Ry. Co. v. Wood,
99 Va. 156 (37 S. E. Repr. 846); Norfolk & Western Ry.
Co. v. Denny, 106 Va. 383 (56 S. E. Repr. 321); Enright v.
R. R. Co., 198 Pa. 166.

OPINION BY ORLADY, J., February 27, 1913:

On June 26, 1907, a train of the defendant company
reached East Falls station in the city of Philadelphia,
about two minutes ahead of its schedule time, and re-
mained at the station about a minute and a half after
discharging and receiving its passengers. While it was
standing still, three children were playing on the street
and station platform, and the verdict implies that one of
them, this plaintiff aged five years, took a seat on the last
step of the front platform of the rear car—the train con-
sisting of three passenger coaches.

The conductor was standing on the station platform be-
tween the first and second car; the rear brakeman was on
the front platform of the rear coach, leaning out; the front
brakeman was on the rear platform of the first coach, and
in answer to a signal from the conductor, gave the engine-
man notice to go ahead. Immediately on starting it was
found that the child was under the trucks of the rear car,
and in response to signals the train was stopped and the
child removed, when it was found that one leg had been
cut off.

The contention of the defendant is stated in the testimony of the rear brakeman, as follows: "I saw a few boys playing on Bowman street, I could not help seeing them; a lot of boys were playing there. The one boy came running down Bowman street to the platform. Just about that time we started. As we did, he came on the platform and turned around and looked up Bowman street. He either lost his balance or did not see where he was going, and fell backward or sidewise between the platforms. I could not do anything to save him, and so pulled the emergency cord, but it was too late. By the time I could put the air on, the car had passed over him."

The location of the conductor and rear brakeman is not disputed, but there is a pronounced discrepancy in the testimony as to the exact location of the boy when the train started. One witness testified that when he was in clear view of the train, "I saw the youngster on the front platform of the last car. He was sitting on the bottom step, on the edge of it. I was about eighty feet away and looking directly at the train. I was attracted to the boy, the train just started and threw him." Another witness with equal opportunity for seeing, stated, "I saw the child seated on the bottom step of the car, just as the train started he was thrown under the wheels. I looked right at the boy when he was on the step." Another witness testified as follows: "At the time I saw the boy he was standing on the first step of the rear car. I seen three little boys, but did not notice what they were doing. As it started, the child went under. It was the first wheel of the rear car that cut the child's leg off. As the train started he jumped on the first step of the rear car, but it was at a standstill."

Counsel for appellant very frankly concedes, "If there were evidence in this case that the conductor who gave the signal to start the train saw the infant plaintiff in a position of obvious danger, and realized that he was one of such tender years that he was unable to protect himself, and with this knowledge started the train thereby

endangering the life or limb of the plaintiff, and failed to take the necessary precautions to protect him, the defendant would be guilty of a wanton act of reckless indifference to the plaintiff's safety, and an injury resulting from such an act, even to a trespasser, entitles him to legal redress."

It is not for us to say which of these witnesses should have been believed by the jury. We did not see them, and the law has wisely put the duty of passing on the credibility of witnesses upon the jury, and its finding of the disputed facts, are to be accepted as the best solution of the contested facts by the courts, if in the judgment of the court there is sufficient credible evidence to warrant such a finding. If the testimony of the witnesses who fix the boy as being seated on the lower step of the coach, almost within an arm's reach of the rear brakeman who was on the platform immediately above it, "and looking out," and that the conductor of the train was standing on the platform but a car length away, looking east and west, is to be believed a jury would be warranted in concluding that they had recklessly and wantonly exposed this child to a very extreme danger. While this theory is opposed to the boy's "standing on the step when the train started" and is directly opposed to the contention of the rear brakeman, "that he came running to the platform, losing his balance and falling backward or sidewise between the platforms," yet, there is nothing specially unreasonable in either narrative, and it is necessary in order to hold the defendant liable to conclude that the child was seated on the lower step while the train was at a standstill, in view of the conductor and brakeman, or either of them, or in such a position that they or either of them should in the exercise of reasonable care, have seen him in this position of peril.

The verdict means that the jury did so believe, and having so found, we cannot say that there was not sufficient evidence to sustain that finding. True, he was not there as a passenger or even licensee, but the rule is very

clearly declared to be in Enright v. R. R. Co., 198 Pa. 166, "Whilst a railroad company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to a passenger, it is, nevertheless, not exempt from responsibility to such strangers for injuries arising from its neglect, or from its tortious acts. If then we assume that the plaintiff was a trespasser, still the defendant had a duty to perform with reference to his safety, which it was not at liberty to neglect—even trespassers are entitled to humane consideration."

Although the child was a trespasser, and might have been ejected from the train in a manner which would not have endangered his life or injured his body, the court below was justified in submitting the question to the jury to determine whether under all the circumstances the defendant was guilty of negligence. And as said in Pollack v. R. R. Co., 210 Pa. 631, "The child being of tender years and in a perilous position, it was the duty of the brakeman to use the care that reasonable and prudent persons would exercise under the circumstances in attempting to cause him to alight from the moving train:" Walsh v. Pittsburg Railways Co., 221 Pa. 463; Levin v. Traction Co., 201 Pa. 58.

The case is a very close one on its facts, it was very carefully tried, and was adequately submitted to the jury. A verdict in favor of either party would be warranted under the conflicting testimony, and we cannot say that there is not sufficient evidence to sustain the verdict in plaintiff's favor, and it is affirmed.

PORTER, J., dissents.